10   227<br>119   95<br>119   1101

## C. R. KENNEDY *v.* A. S. PHELPS, Street Commissioner—CITY OF NEW ORLEANS, Intervenor.

The Mayor and Aldermen, &c., of New Orleans are fully empowered to enact ordinances and adopt measures of police, for preserving the health and promoting the comfort, convenience and general welfare of the inhabitants.

The power to abate nuisances is a portion of police authority, necessarily vested in the corporations of all populous towns.

A resolution of the Common Council directing a city officer to abate a particular nuisance under a general ordinance, is legal, and cannot be assimilated to an ordinance inflicting a fine or penalty upon a particular individual.

FOR Plaintiff and Appellant, *Michel & Gillmore.*

*J. Livingston*, City Attorney, and *Benjamin, Bradford & Finney*, for city of New Orleans, appellee, cited 7 Cowen, 585; 12 Pick. 184; 15 Wend. 397; 4 M. 10; 3 Paige; 9 Wend. 571; 7 Bacon's Abridg. *verbo nuisance*, C.

BUCHANAN, J. The plaintiff has been extensively engaged in the business of salting hides for the last fourteen years, at the corner of Laurel and First streets, in the Fourth District of the city of New Orleans, formerly the city of Lafayette.

On the 24th June, 1854, the City Council of New Orleans adopted a resolution in the following words:

"*Resolved*, That the Street Commissioner be and is hereby directed to notify the owner or occupant of the premises situated at the corner of Laurel and First streets, Fourth District, and used as a hide-curing establishment, to discontinue to use said premises for said purpose, and on failure on his part, to comply with said notice, to have said premises closed up as a public nuisance without delay, under the ordinance of the city of Lafayette, passed May 18th, 1833, *concerning nuisances.*"

The Street Commissioner served upon plaintiff the following notice.

"New Orleans, June 27th, 1854. Mr. *Charles R. Kennedy*, Sir : Take notice that you are hereby required to discontinue the use of your premises, on the corner of First and Laurel streets, for the purpose of curing hides, within one day from the service of this notice, and in default of your not complying with the requisites of the above, you will be dealt with as directed in sections 7 and 8 of the city ordinance, passed third day of May, 1852; also late city of Lafayette, ordinance of May 18th, 1833, and the resolution of the City Council, approved 24th June, 1854. *Aug. S. Phelps*, Street Commissioner."

The petition of plaintiff avers that defendant, acting under the resolution of the City Council above cited, threatens to close and shut up the establishment of plaintiff, and to prevent him from carrying on his business therein, after twenty-four hours notice : that plaintiff fears defendant will, unless restrained by injunction, carry out his said threats, and thereby deprive plaintiff of his business, to his irreparable injury : that the ordinances and resolution mentioned in the notice served upon plaintiff by defendant, are contrary to the laws and constitution of the State : and prays that an injunction may issue, restraining defendant from closing plaintiff's establishment, or in any way interfering with the same, or preventing plaintiff from carrying on the business therein now carried on by plaintiff.

An injunction having issued upon the petition, the city of New Orleans intervened in the suit, praying to be allowed to defend the same in the place and stead of the Street Commissioner—and pleaded the general issue to plaintiff's demand.

The city ordinance of Lafayette, of the 11th May, 1833, concerning nuisances, referred to in the resolution of the 24th June, 1854, is in the following words :

"— Whenever any workshop, manufactory, or other like establishment, situated within the limits of this city, exhales fœted or offensive odor or vapor, it shall be the duty of the police officer to examine the premises ; and he is authorized for that purpose to enter all such establishments between the rising and setting of the sun ; and if such odor, in his opinon, is sufficient to vitiate the air or impair the health of the inhabitants, he shall notify the owner or proprietor thereof in writing, requiring him to cleanse the same, or discontinue all work thereon, noxious to the health of the city, and within such time as the police officer may designate. At the expiration of such time, should said person neglect to comply with said notice, he shall be liable to a fine of from ten to one hundred dollars for each week he so neglects said notice, to be recovered for the use of the city."

The power to abate nuisances, is a portion of police authority, necessarily vested in the corporations of all populous towns.

In the case of *Hart* v. *The Mayor of Albany*, 3d Paige's, New York Chancery Reports, the Court said, "The question of nuisance or no nuisance is al-

ways a question of fact, in relation to which the opinions of individuals will necessarily differ. It therefore becomes necessary in all populous towns, to regulate such matters by police ordinances. And public policy requires that the corporation of the place should not be disturbed in the exercise of their powers unless they have clearly transcended their authority." Again in the case of *Baker* v. *City of Boston*, 12th Pickering, 193, the Supreme Court of Massachusetts said, "It has not been denied, it cannot be, that the *Mayor* and *Aldermen* are clothed with legislative powers and prerogatives to a certain extent, and that they are fully empowered to adopt measures of police, for the purpose of preserving the health, and promoting the comfort, convenience and general welfare of the inhabitants within the city. Among these powers no one is more important than that for the preservation of the public health. It is not only the right, but the imperative duty of the city government, to watch over the health of the citizens, and to remove every nuisance, so far as they may be able, which may endanger it."

The police powers thus generally recognized as essential to municipal government, have been expressly conceded to the city of New Orleans, by the Act of 14th of March, 1816 (Bullard & Curry, 101;) as they are by implication to the late city of Lafayette, by the 10th section of its Charter (Bullard & Curry, 137;) and in the case of the *First Municipality* v. *Blineau*, 3d Annual, 689, our predecessors maintained the duty of the municipal government to maintain by all lawful means, the cleanliness and salubrity of the city, and its possession of ample powers to that effect. In that case, indeed, the Supreme Court annulled an ordinance which inflicted a fine upon a particular person; and the present case has been sought to be assimilated to *Blineau's* case in that respect. But we do not so consider it. The resolution of the 24th June, 1854, is pointed at the plaintiff's establishment, it is true; but the Street Commissioner is ordered to proceed against plaintiff in the mode pointed out by a general ordinance, that is to say, as we have seen above, a prosecution before the legal tribunal for the recovery of a fine. The District Judge has properly observed, that there is no evidence showing but that the intention of the corporation was to proceed against the plaintiff under that ordinance. That the Street Commissioner so understood the resolution is plain, from the notice which he has given.

It is therefore adjudged and decreed, that the judgment of the District Court be affirmed, with costs.